IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| JOHN T. CLARK,  )<br>)<br>)   CIVIL ACTION NO. 0:05-845-MBS-BM<br>Plaintiff,   )<br>v.                              )   **REPORT AND RECOMMENDATION**<br>)<br>JO ANNE B. BARNHART      )<br>COMMISSIONER OF SOCIAL   )<br>SECURITY,                   )<br>)<br>Defendant.      )<br>_____ ) | |

The Plaintiff filed the complaint in this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner wherein he was denied disability benefits. This case was referred to the undersigned for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), (D.S.C.).

Plaintiff applied for Disability Insurance Benefits (DIB) on November 26, 2001, alleging disability as of July 26, 2001 due to degenerative disc disease, carpal tunnel syndrome, and tendinitis in his right foot. (R.pp. 43-45, 58). Plaintiff's application was denied initially and upon reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge (ALJ), which was held on July 27, 2004. (R.pp. 195-222). The ALJ thereafter denied Plaintiff's claim in a decision issued November 15, 2004. (R.pp. 14-22). The Appeals Council denied Plaintiff's request for a review of the ALJ's decision, thereby making the determination of the ALJ the final decision of the Commissioner. (R.pp. 5-9).

The Plaintiff then filed this action in United States District Court. Plaintiff asserts that there is not substantial evidence to support the ALJ's decision, and that the decision should be



reversed and remanded for an award of benefits. The Commissioner contends that the decision to deny benefits is supported by substantial evidence, and that the Plaintiff was properly found not to be disabled.

### Scope of review

Under 42 U.S.C. § 405(g), the Court's scope of review is limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980). If the record contains substantial evidence to support the Commissioner's decision, it is the court's duty to affirm the decision. Substantial evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. **If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."** [emphasis added].

Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966)). The Court lacks the authority to substitute its own judgment for that of the Commissioner. Laws, 368 F.2d at 642. "[T]he language of [405(g)] precludes a de novo judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by substantial evidence." Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

### Discussion

A review of the record shows that Plaintiff, who was forty-seven (47) years old when he alleges his disability began, has a high school equivalent education (GED) with past relevant

2



work experience as a laminating machine operator. (R.pp. 57-60). In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that he has an impairment or combination of impairments which prevent him from engaging in all substantial gainful activity for which he is qualified by his age, education, experience and functional capacity, and which has lasted or could reasonably be expected to last for at least twelve (12) consecutive months. After review of the evidence and testimony in the case, the ALJ determined that, although Plaintiff does suffer from degenerative disc disease and meralgia paresthetica[1], which render him unable to perform his past relevant work, he nevertheless retained the residual functional capacity to perform light work[2] with restrictions, and was therefore not disabled. (R.p. 21).

Plaintiff asserts that in reaching this decision, the ALJ erred by improperly evaluating Plaintiff's subjective testimony as to the extent of his pain and limitations; by failing to give sufficient weight to the opinion of Plaintiff's treating physician, Dr. William Lehman; and by failing to properly consider all of the evidence or to keep an open mind with respect to Plaintiff's claim. However, after careful review of the record in this case, the undersigned finds that there is substantial evidence in the record to support the conclusion of the ALJ that Plaintiff was not disabled as that term is defined in the Social Security Act during the relevant time period, and that the decision of the Commissioner should therefore be affirmed.

First, the undersigned does not find reversible error in the ALJ's consideration of the

---

[1] Meralgia paresthetica is a disease marked by paresthesia, pain, and numbness in the outer surface of the thigh, in the region supplied by the lateral femoral cutaneous nerve, due to entrapment of the nerve at the inguinal ligament. Dorland's Illustrated Medical Dictionary, (28th ed. 1994), p. 1014.

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b) (2005).



medical evidence in conjunction with Plaintiff's subjective testimony, or that the ALJ improperly considered Plaintiff's subjective testimony. In his decision, the ALJ reviewed Plaintiff's testimony and then compared that testimony with Plaintiff's medical records, which generally reflect that Plaintiff only needed and received conservative treatment for his condition and which the ALJ found do not show any impairment which could reasonably be expected to produce the totally debilitating pain alleged. See generally, (R.pp. 16-19). See Mickles v. Shalala, 29 F.3d 918, 925-926 (4th Cir. 1994) [In assessing the credibility of the severity of reported subjective complaints, consideration must be given to the entire record, including the objective and subjective evidence]. The ALJ's findings and conclusions are supported by substantial evidence in the record.

The record reflects that although Plaintiff has been treated for back problems and pain since 1996, his condition was not of disabling severity, and he continued to work at what was admittedly a physically strenuous job. See generally, (R.pp. 121-122, 128-134, 138-139, 143-154, 158-159). In June 2001 (the month before Plaintiff alleges his disability began), Dr. Dennis Gettelfinger noted that Plaintiff had a normal gait with normal extremity bulk, tone, and power, and that he was not interested in pursuing surgery for his condition. (R.p. 160). A functional capacity test for Plaintiff's job performed by the Carolina Physical Therapy Network on June 27, 2001 found that Plaintiff could lift up to fifty (50) pounds but was limited in his ability to bend, push or pull strenuously, or operate a lift truck. (R.p. 192).[3]

Plaintiff was examined by Dr. Lehman on July 24, 2001 (two days before his alleged disability onset date), at which time Plaintiff was found to have some distress with ambulation but

---

[3] Based on this functional capacity assessment, Plaintiff was deemed to not be able to perform his then current job (laminating machine operator), which required heavy lifting (defined as in excess of fifty pounds). (R.pp. 19, 21, 192).



no specific neurologic deficit. Dr. Lehman noted that Plaintiff was still working as well as coaching little league baseball and helping his wife in the yard. He was at that time on light work duty, and Dr. Lehman opined that Plaintiff might need to find "an alternative job activity, placing less demand on his back." (R.p. 135). Plaintiff returned to see Dr. Lehman on October 30, 2001, with Dr. Lehman noting that he was "a relatively healthy man still quite large at 290 lbs." Dr. Lehman found considerable stiffness in Plaintiff's lumbar spine on flexion with straight leg raising creating back pain, although no motor, sensory or reflex deficits were seen, and there were no signs of radiculopathy, or of weakness, numbness, or altered reflexes. Dr. Lehman noted that it was unlikely Plaintiff would be able to return to his previous job activities due to his restrictions, but he did not restrict Plaintiff from all work activity and did not believe surgery was necessary for Plaintiff's condition. (R.p. 136).

Plaintiff returned to see Dr. Gettelfinger on January 9, 2002 (Plaintiff had failed to show-up for a follow-up appointment in July), who again noted that Plaintiff had a normal gait with normal extremity bulk, tone, power and coordination. Plaintiff also again indicated that he was not interested in having surgery, and he was advised by Dr. Gettelfinger to lose weight and continue taking his medications. (R.p. 161). Plaintiff then returned to see Dr. Lehman on May 14, 2002, who noted that Plaintiff was now out of work because his previous job had not been "suitable for any light duty activity." Dr. Lehman also noted that Plaintiff's condition had been responding to an extensive therapy program, but had subsequently gotten worse when no formal therapy was provided. On examination Dr. Lehman found that Plaintiff ambulated reasonably well although he still weighed approximately 290 pounds, with a general examination revealing no specific medical abnormalities and that Plaintiff was orthopaedically stable. Tenderness and limited mobility of the back were noted,



although Dr. Lehman also noted that Plaintiff could lift up to 30 pounds. Dr. Lehman further believed that Plaintiff was limited occupationally to walking two hours with limited bending and standing. (R.p. 137).

Plaintiff then saw Dr. Stephen Culp (another physician who had seen Plaintiff off and on since 1996) on August 15, 2002, and the only record of examinations after that point are a February 7, 2003 examination performed by Dr. Culp, at which time Dr. Culp noted that Plaintiff was "doing well. No complaints"; (R.p. 169); and a follow-up visit to Dr. Culp on June 23, 2003, when Plaintiff presented with chronic low back pain after having umpired a baseball game. An examination of Plaintiff's back at that time was unremarkable, and his lower extremities revealed no muscle, sensory or reflex deficits. Plaintiff was continued on his medications. (R.p. 174).

In addition to the records of Plaintiff's treating and examining physicians, the record also contains a physical residual functional capacity assessment completed by Dr. Gerald Fisher, a state agency medical consultant, on August 27, 2002. Dr. Fisher concluded after review of Plaintiff's medical records that Plaintiff retained the residual functional capacity for light work with no limitations other than to never climb ropes and scaffolds and only occasionally climb ramp/stairs, and ladders. (R.pp. 107-114).

The ALJ reviewed this medical record and also considered Plaintiff's testimony and found that Plaintiff's impairments were not so severe as to preclude all sustained work activity. Rather, he found that Plaintiff could perform a wide range of light work as long as he was precluded from frequent crawling, stooping and crouching, with a limited ability to climb scaffolds and



ladders.[4] The ALJ also found that Plaintiff had no evidence of any severe impairment with regard to his complaints of carpal tunnel syndrome and hypertension. The records and opinions of Plaintiff's treating and examining physicians discussed hereinabove provided substantial evidence to support the residual functional capacity found by the ALJ; see Hunter, 993 F.2d at 35 [ALJ may properly give significant weight to an assessment of an examining physician]; Richardson v. Perales, 402 U.S. 389, 408 (1971) [assessment of examining, non-treating physicians may constitute substantial evidence in support of a finding of non-disability]; as does the opinion of the state agency physician. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986) [opinion of a non-examining physician can constitute substantial evidence to support the decision of the Commissioner]. Plaintiff's claim that the ALJ improperly considered and evaluated his subjective testimony is without merit. Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993) [ALJ may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints]; Jolley v. Weinberger, 537 F.2d 1179, 1181 (4th Cir. 1976) [finding that objective medical evidence, as opposed to the claimant's subjective complaints, supported an inference that he was not disabled]; see also Payne v. Sullivan, 946 F.2d 1081, 1084 (4th Cir. 1991) [claimant not entitled to disability where the record as a whole failed to "demonstrate an inability to engage in work activity for a continuous period of at least twelve months"].

The undersigned also does not find any reversible error in the ALJ's consideration and

---

[4] While Dr. Fisher concluded that the Plaintiff should "never" climb scaffolds, even assuming that the ALJ was required to adopt this finding, his failure to do so is harmless since none of the jobs listed by the vocational expert include any climbing. See DICOT 295.367-026; 211.462-010; 920.686-030; 237.367-022; 669.687-014; 299.357-014; 582.687-010; 521.687-102. See also discussion, infra.

7



treatment of the opinion of Dr. Lehman. While it is true that on June 24, 2004 Dr. Lehman wrote a "To Whom It May Concern" letter in which Dr. Lehman opined that Plaintiff could carry only a maximum of 15 pounds, was unable to sit or stand for over thirty (30) minutes at a time, and was therefore "completely disabled from any work activity due to his on-going back trouble"; (R.p. 189); the ALJ did not give that opinion great weight, noting that this assessment was not only contrary to the other medical evidence in the record, but was contrary to even Dr. Lehman's own medical notes, records, and previously expressed opinions which reflected a greater physical capacity. (R.pp. 18-19); see also (R.pp. 135-137); Robinson v. Sullivan, 956 F.2d 836, 840 (8th Cir. 1992) [holding that conservative treatment is not consistent with allegations of disability]. It is further noted that this "To Whom It May Concern Letter" includes a period of time considerably prior to Plaintiff's disability onset date, and that the letter itself was written (apparently) almost two years after Dr. Lehman had himself last seen the Plaintiff. Based on the record and evidence in this case, the undersigned does not find any reversible error in the ALJ's treatment of Dr. Lehman's opinion. See Craig v. Chater, 76 F.3d 585, 589-590 (4th Cir. 1996) [rejection of treating physician's opinion of disability justified where the treating physician's opinion was inconsistent with substantial evidence of record]; Hays, 907 F.2d at 1456 [it is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence]; Castellano v. Secretary of Health & Human Servs., 26 F.3d 1027, 1029 (10th Cir. 1994) [physician opinion that a claimant is totally disabled "is not dispositive because final responsibility for determining the ultimate issue of disability is reserved to the [Commissioner]"]; 20 C.F.R. §§ 404.1527(e)(2) and 416.927(e)(2).

   Finally, the record reflects that the ALJ obtained vocational expert testimony at the hearing, where the vocational expert was proffered a hypothetical which reflected the residual



functional capacity found to exist by the ALJ. (R.pp. 215-216). In response to this hypothetical, the ALJ identified several jobs which Plaintiff could perform with his limitations, considering his age and educational background. (R.p. 216). The vocational expert also identified some additional jobs Plaintiff could perform in the sedentary range of activity. (R.pp. 217-218). The undersigned can find no evidence in the hearing transcript or in the ALJ's decision to show that the ALJ was in any way biased in his consideration of Plaintiff's claim, or did not properly consider or evaluate the evidence in this case. While Plaintiff may disagree with the findings of the ALJ, the undersigned has previously concluded that these findings are supported by substantial evidence in the record as that term is defined in the applicable caselaw, and the undersigned finds no grounds in the ALJ's treatment of the evidence in this case or in the vocational expert's testimony for reversal of the final decision of the Commissioner. Lee v. Sullivan, 945 F.2d 687, 694 (4th Cir. 1991); see also Martinez v. Heckler, 807 F.2d 771, 773 (9th Cir. 1986).

## Conclusion

Substantial evidence is defined as " … evidence which a reasoning mind would accept as sufficient to support a particular conclusion." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). As previously noted, if the record contains substantial evidence to support the decision (i.e., if there is sufficient evidence to justify a refusal to direct a verdict were the case before a jury), this Court is required to uphold the decision, even should the Court disagree with the decision. Blalock, 483 F.2d at 775.

Under this standard, the record contains substantial evidence to support the conclusion of the Commissioner that the Plaintiff was not disabled within the meaning of the Social



Security Act during the relevant time period. Therefore, it is recommended that the decision of the Commissioner be **affirmed**.

_____
Bristow Marchant
United States Magistrate Judge

Columbia, South Carolina

January 11, 2006

10

